***********
The Full Commission has reviewed the prior Opinion and Award, based upon the record before Deputy Commissioner Houser and the brief and oral argument of defendant. The appealing party has shown good grounds to reconsider the evidence. The Full Commission reverses in part and modifies in part the Opinion and Award of Deputy Commissioner Houser and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties in the Pre-Trial Agreement as:
 STIPULATIONS
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on November 16, 2001.
2. On the date of the injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. Casualty Reciprocal Exchange was the carrier on the risk.
4. On November 16, 2001, plaintiff's average weekly wage was $405.58, yielding a compensation rate of $270.40.
5. Plaintiff returned to work following his injury.
6. Pursuant to the parties' Pre-Trial Agreement, the following exhibits were stipulated into evidence:
a. All of plaintiff's medical records;
b. An index of medical records;
c. All Industrial Commission Forms submitted in the case.
7. The issues to be determined are whether defendants should be ordered to pay for the additional medical testing ordered by Dr. William Alexander Huff, whether plaintiff needs additional medical treatment as a result of the injury by accident, and whether plaintiff is entitled to compensation pursuant to N.C. Gen. Stat. §97-31.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. On November 16, 2001, plaintiff sustained an admittedly compensable injury by accident when he fell 10 feet from a porch while working for defendant-employer. Defendants accepted compensability of the claim by filing a Form 60. As the result of his fall, plaintiff sustained injuries to his right wrist, neck, legs, shin and knees.
2. Plaintiff initially received medical treatment at Doctor's Urgent Care in Wilmington, where plaintiff reported pain in a number of body parts. By early December 2001, plaintiff was only reporting problems with his right knee and right wrist, and was referred to Dr. Richard Bahner at Atlantic Orthopedics.
3. On December 18, 2001, Dr. Bahner examined plaintiff, who complained of continued pain, weakness and loss of normal grip strength in his wrist, and pain, tenderness and weakness in his knee. Plaintiff also reported that his symptoms increased with activity. Plaintiff did not report problems with other body parts at that time. Dr. Bahner recommended an MRI of plaintiff's right wrist and prescribed a neoprene sleeve and massage for plaintiff's right knee.
4. Between December 18, 2001 and May 2, 2002, plaintiff saw Dr. Bahner on several occasions and complained only of ongoing problems with right wrist and right knee. By April 4, 2002, Dr. Bahner noted that plaintiff's right wrist condition had improved and was no longer symptomatic.
5. On April 15, 2002, plaintiff returned to full duty work with defendant-employer. Plaintiff contends that his symptoms began to worsen subsequent to that date, with the resumption of his normal work activities.
6. On May 2, 2002, plaintiff reported to Dr. Bahner that he continued to experience pain in his right knee. Dr. Bahner noted that plaintiff had a clinically stable right knee and released him to full duty work. Dr. Bahner assigned a zero percent permanent partial disability rating to plaintiff's right leg. Dr. Bahner did not assign any permanent partial impairment rating to plaintiff's right wrist.
7. Although he had been released to full duty work with no impairment rating by Dr. Bahner, plaintiff contends that his symptoms continued to worsen. Accordingly, plaintiff sought a second opinion from Dr. Alexander Huff at Southeastern Orthopaedics and Sports Medicine on September 11, 2002. Following an examination, Dr. Huff opined that plaintiff sustained a right knee sprain and right wrist sprain. Dr. Huff did not assign plaintiff a permanent partial impairment rating, but did recommend additional testing and treatment, including an MRI of plaintiff's cervical spine and bilateral upper extremity nerve conduction studies. Defendants requested that plaintiff be re-examined by the treating physician, Dr. Bahner, prior to authorizing such treatment.
8. On November 11, 2002, plaintiff returned to Dr. Bahner for a re-evaluation. Plaintiff reported continued pain, numbness, and instability in his right knee, and continued wrist problems. Dr. Bahner noted that plaintiff's numbness in his right knee was due to a neuroma of the infrapatellar branch and that plaintiff's other knee symptoms "[did] not correlate to any anatomical lesion that I can detect." Dr. Bahner still opined that plaintiff's wrist sprain had resolved. During this examination, plaintiff reported to Dr. Bahner for the first time that he was experiencing a problem with his neck, shoulder and arm.
9. Neither Dr. Huff nor Dr. Bahner causally related plaintiff's neck, shoulder or arm pain to the compensable injury by accident. Therefore, the greater weight of the medical evidence fails to show that plaintiff's neck, shoulder and arm condition are causally related to plaintiff's fall.
10. On November 22, 2002, Dr. Bahner revised his prior permanent partial disability rating. Based on plaintiff's sensory loss in the infrapatellar branch of the saphenous nerve, which is a sensory nerve with no motor function loss, Dr. Bahner changed plaintiff's permanent partial disability rating for his right leg from zero to one percent. Dr. Bahner recommended no additional treatment or tests for plaintiff and released him to return to full duty work with no restrictions.
11. As the result of his November 16, 2001 injury by accident, plaintiff sustained a one percent permanent partial disability rating to his right leg.
12. There is insufficient evidence of record upon which to enter a finding regarding any permanent disability plaintiff may or may not have to his right wrist.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On November 16, 2001, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. §97-2(6).
2. Plaintiff is entitled to permanent partial disability compensation at the rate of $270.40 per week for a period of two weeks for the one percent impairment rating to his right leg. N.C. Gen. Stat. § 97-31.
3. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of the November 16, 2001 injury by accident to his right leg and right wrist. N.C. Gen. Stat. §§ 97-25; 97-25.1. The approved medical expenses include the second opinion by Dr. Huff but do not include additional medical testing ordered by Dr. Huff to treat plaintiff's neck, shoulder and arm.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff permanent partial disability compensation at the rate of $270.40 per week for a period of two weeks for the one percent impairment rating to plaintiff's right leg.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his November 16, 2001 injury by accident to his right leg and right wrist. The approved medical expenses include payment to Dr. Huff for his second opinion evaluation but do not include the additional testing recommended by Dr. Huff.
3. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff herein is approved for plaintiff's former counsel. This fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff.
4. Defendants shall pay the costs.
This 30th day of August 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER